UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHRISTINA JOCIC, <br><br> Plaintiff, <br><br> vs. <br><br> FORGE GLOBAL HOLDINGS, INC., KIMBERLY VOGEL, DEBRA CHRAPATY, ASIFF HIRJI, LARRY LEIBOWITZ, KELLY RODRIQUES, ASHWIN KUMAR, AND BRIAN MCCDONALD, <br><br> Defendants. | Case No. 25-cv-15078 |

## COMPLAINT

Plaintiff Christina Jocic ("Plaintiff"), by and through counsel, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

### NATURE OF THE ACTION

1.     This is an action brought by Plaintiff against Forge Global Holdings, Inc. ("Forge Global" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Forge Global, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, and United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9. Plaintiff's claims arise in connection with the proposed acquisition of Forge Global by The Charles Schwab Corporation

("Parent") and Ember-Falcon Merger Sub., Inc. ("Merger Sub"), (together with Parent and Merger Sub, "Charles Schwab").

2.      On or about November 5, 2025, Forge Global entered into an agreement and plan of merger (the "Merger Agreement"), whereby Charles Schwab will acquire Forge Global (the "Proposed Transaction") and shareholders of Forge Global common stock will receive $45.00 in cash for each share of Forge Global common stock they own (the "Merger Consideration").

3.      On or about December 8, 2025, in order to convince shareholders to support the Proposed Transaction, the Board authorized the filing of a Schedule 14A Preliminary Proxy Statement (the "Proxy Statement") with the Securities and Exchange Commission ("SEC").  As detailed below, the Proxy Statement is materially incomplete and misleading with respect to: (i) the Company's past relationships with its financial advisor, Financial Technology Partners ("FT Partners"), and the potential conflicts of interest that these relationships implicated; and (ii) the extent to which certain Company insiders' personal interests in the Proposed Transaction may have impacted the fairness of the process.

4.      The special meeting at which Forge Global shareholders will cast their votes on the Proposed Transaction (the "Special Meeting") will be scheduled and the definitive proxy statement that will be used to solicit votes on the Proposed Transaction will be sent to Forge Global shareholders shortly.  It is imperative that the material information that has been omitted from the Proxy Statement be disclosed immediately so public stockholders may have time to consider the information that has been omitted and misrepresented in the Proxy Statement and make a fully and fairly informed determination as to how to vote.

5.      For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from consummating the Proposed Transaction, unless and until the material information

discussed below is disclosed to Forge Global's shareholders, or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Vigman*, 764 F.2d at 1316.

8.      Venue is proper in this Court under Section 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b)(2) because Defendants are subject to personal jurisdiction in this District, Defendants' legal advisor maintain offices in this District, and shareholders of the Company reside in this District so Defendants were aware that the Proxy Statement would be reviewed in this District. *Santore v. Swaminathan*, No. 17 cv 5742, 2018 U.S. Dist. LEXIS 33352, at *23 (N.D. Ill. Mar. 1, 2018) ("the standard for establishing venue under [the Exchange Act] is

not a rigorous one") (quoting *Haskett v. Reliv' Int'l.*, No 94 c 1461, 1994 U.S. Dist. LEXIS 5678, at *6 (N.D. Ill. Apr. 29, 1994)); *see also City of Miami Gen. Emples. & Sanitation Emples. Ret. Trust v. Casey*, No. 22-cv-2371, 2023 U.S. Dist. LEXIS 239991, at *4 (S.D. Ohio Mar. 27, 2023) ("The rule for establishing venue under the Securities Exchange Act is more permissive than under 28 U.S.C. § 1391, consistent with the intent of the venue and jurisdiction provision in the securities laws 'to grant potential plaintiffs liberal choice in their selection of a forum.'") (quoting *Wayne Cnty. Emples.' Ret. Sys. v. MIC Inv. Corp.*, 604 F. Supp. 2d 969, 973 (E.D. Mich. 2009)). Further, Defendants were aware that the Tender Offer Statement and/or the Recommendation Statement would be reviewed in this District. *See Sarantakis v. Gruttadauria*, No. 02 c 1609, 2003 U.S. Dist. LEXIS 4002, at *23 (N.D. Ill. Mar. 17, 2003) ("Venue is appropriate in a securities case where a defendant causes false or misleading information to be transmitted into a judicial district."); *see also Oxford First Corp. v. PNC Liquidating Corp.*, 372 F. Supp. 191, 197 (E.D. Pa. Mar. 6, 1974) ("Venue will be sustained in a securities case where a defendant causes false or misleading information to be transmitted into a judicial district, even if the defendant never has been physically present in that district."); *Mitchell v. Texas Gulf Sulphur Co.*, 446 F.2d 90, 106 (10th Cir. 1971) (finding venue proper in the District of Utah where the defendant released a false and fraudulent press statement that was printed in the Wall Street Journal and was read and relied upon by the plaintiff in Salt Lake City, Utah).

## **PARTIES**

9. Plaintiff is, and has been continuously throughout all times relevant hereto, an owner of Vimeo common stock.

10. Defendant Forge Global is a publicly traded Delaware corporation with the principal place of business in California. Forge Global provides marketplace data services and technology

for private market participants. Forge Global's common stock trades on the Nasdaq Global Select Market (the "Nasdaq") under the ticker symbol "FRGE."

11. Defendant Kelly Rodriques ("Rodriques") is Forge Global's Chief Executive Officer and a director of the Company.

12. Defendant Debra Chrapaty ("Chrapaty") is the Chairman of the Board of Directors of the Company.

13. Defendant Asiff Hirji ("Hirji") is a director of the Company.

14. Defendant Ashwin Kumar ("Kumar") is a director of the Company.

15. Defendant Kimberly Vogel ("Vogel") is a director of the Company.

16. Defendant Larry Leibowitz ("Leibowitz") is a director of the Company.

17. Defendant Brian McDonald ("McDonald") is a director of the Company.

18. The defendants identified in paragraphs 11 through 18 are collectively referred to as the "Individual Defendants" or the "Board."

## SUBSTANTIVE ALLEGATIONS

### A. Background of the Proposed Transaction

19. On June 30, 2023 Forge Global's board agreed to form a Special Committee for the purpose of exploring strategic alternatives for the Company, which was composed of directors Hirji, Chrapaty, and Vogel.

20. On April 8, 2024, the Special Committee engaged FT Partners to serve as its financial advisor. The Proxy Statement indicates that:

> The Special Committee selected FT Partners to act as its financial advisor based on FT Partners' qualifications, expertise, and reputation, and FT Partners' knowledge of the financial technology industry and business and affairs of Forge.

> At various times since its creation, as considered appropriate by the Special Committee, the Special Committee requested, and FT Partners and Morris Nichols,

> respectively, provided disclosures with respect to FT Partners' and Morris Nichols' respective potential conflicts with respect to the potential counterparties to a potential transaction with Forge then being considered by the Special Committee. The Special Committee evaluated and considered each such disclosure and, after each such disclosure, determined that FT Partners and Morris Nichols, respectively, did not have any material conflicts during the relevant period with respect to a potential transaction then being considered by the Special Committee.

Proxy Statement at 35.

21.     On September 8, 2025, Rodriques engaged in discussions with a "Company A" regarding a potential strategic transaction.

22.     On September 15, 2025 Rick Wurster, president and CEO of Charles Schwab, spoke with Rodriques in which Wurster expressed Charles Schwab's non-binding indication of interest of acquiring Forge Global for approximately $35.00 to $40.00 per share in cash.

23.     Additionally, on September 15, 2025, Forge Global's board agreed to appoint McDonald to the Special Committee in place of Vogel. The Proxy Statement does not detail how or why McDonald was selected, stating only:

> On the same day, the Board determined to appoint Brian McDonald to the Special Committee in place of Ms. Vogel. As a result, the Special Committee was comprised of Mr. Hirji (committee chairman), Mr. McDonald and Larry Leibowitz (who had been appointed to the Special Committee in place of Ms. Chrapaty on December 10, 2024). The Special Committee continued to have the powers delegated to it in its original mandate.

Proxy Statement at 36.

24.     Upon information and belief, the Company and its financial advisors were engaging with Charles Schwab during their strategic processes in 2023 and/or 2024, with such discussions intensifying after McDonald was appointed to the Board in March 2025.

25.     On September 21, 2025, Company A submitted a written non-binding indication of interest to acquire all of Forge Global's outstanding shares at a transaction price of $35.00 to $40.00.

26.     During the next several days, the Special Committee, in conjunction with FT

Partners, reached out to several other entities regarding a potential transaction.

27.     On October 13, 2025, Charles Schwab delivered a proposal to Forge Global expressing Schwab's continued interest in acquiring all of the outstanding shares of Forge Global's common stock for $42.50 per share.

28.     On October 17, 2025, the Special Committee met with members of Forge Global's upper management and representatives from FT Partners to inform them that Charles Schwab, as opposed to Company A, would likely improve their offer to acquire the Company.

29.     On October 23, 2025, after Charles Schwab had adjusted its purchase price to $45.00 per share, Forge Global and Charles Schwab entered into an exclusivity agreement.

30.     On November 3, 2025, the Special Committee informed senior management and FT Partners that the Company and Charles Schwab were effectively finalizing a merger agreement between the two parties.

31.     On November 5, 2025, the Board announced the written consent of the merger agreement with Charles Schwab which birthed the present Proposed Transaction.

**B.      The Proposed Transaction and the Issuance of the Materially Incomplete and Misleading Proxy Statement**

32.     On or about December 5, 2025, Forge Global issued joint press release to announce the Proposed Transaction, stating in part:

**Charles Schwab to Acquire Forge Global Capital, Creating Premier Destination to Democratize Access to Private Markets**

WESTLAKE, Texas--(BUSINESS WIRE)-- The Charles Schwab Corporation (Schwab) today announced it has entered into a definitive agreement to acquire Forge Global Holdings, Inc. [NYSE: FRGE] (Forge Global) in a transaction valued at approximately $660 million. Forge Global operates the premier private market platform and a leading trading marketplace through which investors have bought and sold more than $17 billion in private company shares[1].

Forge Global offers qualified[*] investors a range of direct and indirect opportunities to participate in the private markets. Its combination of a direct marketplace, private company solutions, and proprietary data helps enhance private market access and transparency for qualified investors.

"Our acquisition of Forge Global builds on more than half a century of Schwab innovating on behalf of individual investors, advisors and employers," said Rick Wurster, president and chief executive officer of Charles Schwab. "Through Forge Global's leading marketplace, we're uniquely positioned to deepen liquidity, improve transparency, and further democratize access to this increasingly important source of wealth creation for investors. Schwab's entry into this space also gives private-share issuers more choice and liquidity for founders, employees, and early backers."

**Combining Schwab's Industry-Leading[2] Reach across 46 million Accounts with Forge Global's Expertise to Redefine Private Market Access**

This acquisition accelerates Schwab's strategy to deliver private markets capabilities to retail and advisor clients, building on its expansive suite of wealth, advisory, and investment management solutions, to meet the complex needs of investors. Multi-decade industry trends and rising investor demand for broader diversification are driving sustained momentum in private markets and private wealth capital allocated to alternative asset classes is expected to grow from $4 trillion today to $13 trillion by 2032[3]. The addition of direct access to private securities through Forge Global builds on our recent launch of Schwab Alternative Investments Select, a new alternative investments platform supported by a dedicated team of experts, which is now available to all eligible retail clients with more than $5 million in household assets at Schwab.

Earlier this month, Schwab announced the launch of Schwab Private Issuer Equity Services, a complete equity management solution designed to support private companies in the late stages prior to IPO. Schwab Private Issuer Equity Services makes Schwab's decades of experience managing equity programs for the world's largest public companies available to private company administrators looking for a partner that can scale with them.

Together, Schwab and Forge Global will unite private stock plan administration and liquidity access in a single, integrated ecosystem that benefits all participants. Through this acquisition, Schwab will build on Forge Global's decade plus experience helping private companies deliver capital and liquidity solutions through a partnership model rooted in company approval and trusted collaboration.

Kelly Rodriques, CEO of Forge Global said, "This combination will transform how the private market works. With Schwab's reach and Forge Global's solutions, private companies will gain access to liquidity and new growth options from an expanded market of qualified retail investors, while investors will gain new ways

to invest in the innovation economy. Together, we're making the private markets work better for everyone."

"Access to Schwab's 46 million client accounts and $11.6 trillion in client assets creates a strong distribution platform for private securities," said Wurster. "With the pool of private companies growing and remaining private for longer, a leading platform for individual investors to participate in private markets offers durable, strategic value. We expect meaningful growth in this space and believe our platform will become a go-to venue where retail investors discover new investment opportunities."

…

**Transaction Details**

Under the terms of the agreement, Schwab will acquire all of Forge Global's issued and outstanding common shares for $45 cash per Common Share. The transaction has been unanimously approved by the Boards of Directors of Schwab and Forge Global. The transaction is expected to close in the first half of 2026, subject to customary closing conditions, including approval by Forge Global's stockholders and regulatory approvals. Forge Global's two largest stockholders, Motive Capital and Deutsche Börse, have entered into agreements committing to support the transaction.

J.P. Morgan Securities, LLC served as financial advisor and Wachtell, Lipton, Rosen & Katz acted as legal advisor to Schwab. Financial Technology Partners served as financial advisor and Morris, Nichols, Arsht & Tunnell LLP acted as legal advisor to a Special Committee of Forge Global's Board of Directors. Sullivan & Cromwell LLP acted as legal advisor to Forge Global.

33.     On or about November 6, 2025 Forge Global, in order to solicit approval to consummate the Proposed Transaction from Forge Global's public shareholders, the Board authorized the filing of the Proxy Statement with the SEC.

C.     **The Materially Incomplete and Misleading Proxy Statement**

34.     The Proxy Statement is materially incomplete and misleading in regards to Forge Global's past relationship with FT Partners and whether certain Company insiders may have impacted the process leading up to the Proposed Transaction.

35.     Specially, The Proxy Statement is materially incomplete and misleading with respect to (i) the fact that the Proxy Statement is silent as to FT Partners previously receiving compensation from Forge Global in the form of shares in the Company during 2022 for financial advisory services while Mr. Steve McLaughlin, founder and CEO of FT Partners, was acting as a director for Forge Global; and (ii) that Forge Global's director, Brian McDonald, is not listed as a "Beneficial Owner" of Forge Global stock despite SEC records indicating the contrary.

### i.   The Proxy Statement is Materially Incomplete and Misleading as to the Company's Past Relationships with FT Partners

36.     The Proxy Statement does not fairly disclose all of FT Partners' potential conflicts of interests in offering financial advisory services for Forge Global during the lead up to the Proposed Transaction.

37.     The Proxy Statement suggests that FT Partners were selected as a financial advisor after Forge Global's Special Committee determined that no material conflicts of interest existed which would exempt FT Partners from offering their services:

> On April 8, 2024, the Special Committee formally engaged FT Partners to serve as its financial advisor. The Special Committee selected FT Partners to act as its financial advisor based on FT Partners' qualifications, expertise, and reputation, and FT Partners' knowledge of the financial technology industry and business and affairs of Forge.
>
> At various times since its creation, as considered appropriate by the Special Committee, the Special Committee requested, and FT Partners and Morris Nichols, respectively, provided disclosures with respect to FT Partners' and Morris Nichols' respective potential conflicts with respect to the potential counterparties to a potential transaction with Forge then being considered by the Special Committee. The Special Committee evaluated and considered each such disclosure and, after each such disclosure, ***determined that FT Partners and Morris Nichols, respectively, did not have any material conflicts during the relevant period with respect to a potential transaction then being considered by the Special Committee*** (emphasis added)

Proxy Statement at 35

38.     However, even though the Proxy Statement represents that the Special Committee undertook reasonable and adequate due diligence in its selection of FT Partners as a financial advisor, the Proxy Statement conceals and is silent to the fact that Steve McLaughlin ("McLaughlin"), founder and CEO of FT Partners, was a former director for Forge Global's board during the Fiscal Year 2022.

39.     Additionally, the Proxy Statement further gives the impression that FT Partners did not have any conflict of interests even though FT Partners holds shares in Forge Global. The Proxy Statement gives the impression that FT Partners previously acquired these shares as part of their "ordinary course of business," representing an independent business strategy entirely uninfluenced by McLauglin's former position with Forge Global.

40.     Specifically, the Proxy Statement states, under the section titled "Financial Analyses of Forge," that: "In addition, FT Partners and its affiliates beneficially own 390,639 shares of our [Forge Global] common stock purchased in the ordinary course of business."
Proxy Statement at 51.

41.     The typical investor would understand a statement that an investment banker "purchased" their shares "in the ordinary course of business" as an investment banker simply purchasing shares on the open market for investment purposes.

42.     Moreover, the typical investor would understand that an investment banker "purchasing" their shares "in the ordinary course of business" as an independent endeavor not influenced by providing services tailored to a specific transaction or company. *IBEW Local 98 Pension Fund v. Cent Vt. Pub. Serv. Corp.*, No. 11-cv-222, 2012 U.S. Dist. LEXIS 204116, at *33 (D. Vt. Aug. 23, 2012) (quoting Proxy Statement) ("[I]n the ordinary course of their respective businesses, Lazard, LFCM Holdings LLC (an entity indirectly owned in large part by managing

directors of Lazard) and their respective affiliates may actively trade securities of [CVPS], Gaz Metro and certain of their respective affiliates for their own accounts and for the accounts of their customers and, accordingly, may at any time hold a long or short position in such securities, and may also trade and hold such securities on behalf of [CVPS], Gaz Metro and certain of their affiliates.").

43.     As such, although the Proxy Statement suggests that FT Partners acquired shares by purchasing 390,639 shares of Forge Global common stock as a matter of FT Partners' independent business strategy, such a statement misrepresents and omits that FT Partners actually acquired such shares as compensation from Forge Global for previously conducted financial advisory services in 2022 while McLaughlin was a board member of Forge Global.

44.     Indeed, Forge Global's 2023 Annual Meeting Proxy ("Annual Meeting Proxy") provides that:

> Financial Technology Partners LP ("FTP"), a stockholder of the Company, previously served as financial and strategic advisor to the Company on its financing, merger, and acquisition transactions. ***During Fiscal Year 2022, the Company incurred $18.3 million in fees to FTP, of which $17.4 million was related to common stock issued in connection with the closing of the Business Combination and was recorded as a reduction to additional paid-in capital. The remaining $0.9 million was related to the Company's issuance of certain public and private placement warrants, and was expensed immediately upon consummation of the Business Combination as acquisition-related transaction cost.*** In addition, Steve McLaughlin is the Chief Executive Officer and founder of FTP and served as a director of the Company during Fiscal Year 2022. (emphasis added).

Annual Meeting Proxy at 51.

45.     The 390,639 shares disclosed in the Proxy Statement is therefore consistent with Forge Global's May 19, 2022 Form S-1 filing ("S-1") with the SEC which confirms that McLaughlin owns, with the exclusion of options and warrants, 5,859,595 shares in Forge Global. S-1 at 116.

46.     Accounting for the 1-for-15 reverse split conducted by Forge Global on April 15, 2025 (the "Reverse Split"), the 5,859,595 shares owned by McLaughlin, and by extension FT Partners, would be the exact 390,639 shares disclosed in the Proxy Statement.[1]

47.     As such, the Proxy Statement fails to clarify that FT Partners acquired the 390,639 shares as compensation for financial advisory services while McLaughlin was serving as a board member for Forge Global as opposed to FT Partners acquiring such shares on an open market independent of any relationship with Forge Global.

48.     Indeed, FT Partners' shares in Forge Global were certainly acquired for financial services conducted in 2022 for Forge Global, with FT Partners being recognized in the industry for its aggressive financial advisory services that have been noted for charging large fee rates and contracts      beholding      companies      to      working      with      FT      Partners. https://www.ft.com/content/bad3b77e-7c51-462c-812e-dc64eef50623 ("A 2021 Wall Street Journal profile explains the FT Partners playbook. In exchange for providing to emerging fintech companies what it says are valuable connections and advice, and in some instances capital, the firm extracts high fee rates and ironclad contracts that can extend decades." (last accessed 12/11/2025).

49.     Therefore, after reviewing the Proxy Statement, the typical investor would certainly understand that FT Partners actually purchased their shares in Forge Global in their "ordinary course of business" instead of appreciating and recognizing the truth that such shares were issued as compensation for financial advisory services while McLaughlin was one of Forge Global's directors, a fact that is entirely omitted from the Proxy Statement.

50.     Without appreciating the reality that McLaughlin and his company, FT Partners, were issued shares by Forge Global in exchange for financial advisory services, the typical investor

---

[1] At the time when the reverse split was effectuated on April 15, 2025, the calculation for the number of FT Partners' shares would be as follows: 5,859,595 / 15 = 390,639 shares.

would pay no heed to the fact that FT Partners owns, at a minimum, roughly two percent in Forge Global, a detail that is material for the typical investor to determine whether the Special Committee's selection of FT Partners was influenced by FT Partners' sizable equity in Forge Global despite the Proxy Statement suggesting that the Special Committee determined no material conflicts of interest existed in their selection of FT Partners as a financial advisor for the Proposed Transaction. Moreover, a typical investor would have no basis to question or challenge the independence of FT Partners in providing its services in connection with the Proposed Transaction.

**ii.     The Proxy Statement is Materially Misleading and Incomplete with Respect to whether Company insiders and their personal interests may have impacted the fairness of the process**

51.     The Proxy Statement is also materially incomplete and misleading because it fails to disclose that director McDonald, a member of the Special Committee, was a former employee of Charles Schwab.

52.     Indeed, McDonald served in Charles Schwab's workplace and retail service functions for well over twenty years, serving as a Senior Vice President of Investor Services from 1993 through 2017:

14

https://www.linkedin.com/in/brian-mcdonald-1b79034 (last accessed 12/11/25)

53.     The Proxy Statement does not disclose the extent to which the Board considered the fact that McDonald worked for Charles Schwab for almost 25 years and had been a Forge Global director for just six months when he was appointed to the Special Committee that was in the midst of negotiating a transaction with Charles Schwab.

54.     As part of an individual's employment with Charles Schwab, employees may elect to enroll in an employee stock purchase plan that allows an employee to buy shares of Charles Schwab at discounted prices. https://eac.schwab.com/equity101/espp (last accessed 12/10/2025).

55.     Upon information and belief, McDonald, by virtue of his long tenure and senior status with Charles Schwab, held Charles Schwab stock through an employee stock purchase plan.

56.     As such, McDonald's participation in the negotiations with Charles Schwab is especially problematic as the Proxy Statement fails to disclose the extent to which McDonald holds any Charles Schwab stock.

15

57.     Further, in addition to not disclosing whether McDonald held Charles Schwab stock, the Proxy Statement does not disclose McDonald's ownership of any Forge Global stock, instead only providing the following table:

| Name of Beneficial Owner | Shares of Common Stock Beneficially Owned[1] | %[2] |
|---|---|---|
| Greater than 5% Holders: | | |
| Paul Luc Robert Heyvaert and Entities Affiliated with Motive Partners[3] | 2,107,775 | 14.71 |
| Deutsche Börse AG[4] | 1,614,146 | 11.67 |
| Kostka LLC and Affiliated Individuals as a Group [5] | 1,012,903 | 7.32 |
| Directors and NEOs: | | |
| Kelly Rodriques[6] | 384,580 | 2.78 |
| Kimberley Vogel[7] | 26,861 | * |
| Debra Chrapaty | 28,793 | * |
| Asiff Hirji[8] | 55,829 | * |
| Ashwin Kumar | 21,340 | * |
| Larry Leibowitz[9] | 24,009 | * |
| James Nevin[10] | 11,680 | * |
| All Directors and Executive Officers as a Group | 588,431 | 4.25 |

Proxy Statement at 84

58.     Upon information and belief, the Company has issued restricted stock units to McDonald since he was appointed to the Board.

59.     The Company was obliged to fully and fairly disclose all potential conflicts of interests any of their board members may have possessed, including information concerning the amount of stock a director beneficially owns, due to be owed, or due to be sold.

60.     Indeed, 17 CFR sec. 229.1004(b) provides that a company "State whether any securities are to be purchased from any officer, director or affiliate of the subject company and provide the details of each transaction."

61.     17 C.F.R. 24014a-101, Item 6(d) also requires that a company "Furnish the information required by Item 403 of Regulation S-K (§ 229.403 of this chapter) to the extent known by the persons on whose behalf the solicitation is made." *E.g., Baum v. Harman Int'l Indus.*, 408

F. Supp. 3d 70, 91 (D. Conn. 2019) ("[T]he failure to disclose even potential conflicts of interest may be actionable under federal securities law.") (quoting *IBEW Local 98 Pension Fund v. Cent. Vt. Pub. Serv. Corp.*, No. 11-cv-222, 2012 U.S. Dist. LEXIS 36784, at *40 (D. Vt. Mar. 19, 2012)).

62.    17 C.F.R. 229.403(b) specifically requires:

(b) Security ownership of management. Furnish the following information, as of the most recent practicable date, in substantially the tabular form indicated, as to each class of equity securities of the registrant or any of its parents or subsidiaries, including directors' qualifying shares, beneficially owned by all directors and nominees, naming them, each of the named executive officers as defined in Item 402(a)(3) (§ 229.402(a)(3)), and directors and executive officers of the registrant as a group, without naming them. Show in column (3) the total number of shares beneficially owned and in column (4) the percent of the class so owned. Of the number of shares shown in column (3), indicate, by footnote or otherwise, the amount of shares that are pledged as security and the amount of shares with respect to which such persons have the right to acquire beneficial ownership as specified in § 240.13d-3(d)(1) of this chapter.

63.    The Proxy Statement does not disclose McDonald's shares in Forge Global, potential shares in Charles Schwab, nor how any of his shares in either company will be treated post-transaction.

64.    Such information is clearly material to stockholders as it may provide insights into McDonald and other members of the Special Committee's recommendation that the board pursue a transaction with his former employer, Charles Schwab.

## COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9)**

48.    Plaintiff incorporates each and every allegation set forth as if fully set forth herein.

49.    Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection

of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

50. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

51. The omission of information from a proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

52. Defendants have issued the Proxy with the intention of soliciting the Company's common shareholders' support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the misleading Proxy, which attempts to minimize the number of shares voting against the Proposed Transaction.

53. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

54. The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading.

The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

55. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligent, recklessness, or intentional conduct.

56. The Company is also deemed negligent, reckless, or intentional as a result of the Individual Defendants' intent in preparing and reviewing the Proxy.

57. The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

58. Plaintiff incorporates each and every allegation set forth as if fully set forth herein.

59. The Individual Defendants acted as controlling persons of the Company within the

meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

60.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

61.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

62.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

63.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a)

of the Exchange Act.

64.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

65.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Shareholder Vote or taking any steps to consummate the Proposed Transaction, until the Company issues curative disclosures that fully address the deficiencies in the Proxy Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.     Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.


Dated: December 11, 2025

**OF COUNSEL**

**ADEMI & FRUCHTER LLP**
Jesse Fruchter
3620 East Layton Avenue
Cudahy, Wisconsin 53110
Tel. 414-482-8000
Fax 414-482-8001
jfruchter@ademilaw.com

*Attorneys for Plaintiff*

**ADEMI & FRUCHTER LLP**

By:  */s/ John D. Blythin*
Guri Ademi (WI 1021729)
John D. Blythin (IL 6281648)
3620 East Layton Avenue
Cudahy, Wisconsin 53110
Tel. 414-482-8000
Fax 414-482-8001
gademi@ademilaw.com
jblythin@ademilaw.com

*Attorneys for Plaintiff*